**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
:
STRIKE 3 HOLDINGS, LLC,                                     :
:          Case No. 1:22-cv-00482-CBA-RLM
                              Plaintiff,          :
:
                    vs.                              :
:
JOHN DOE subscriber assigned IP address     :
24.46.250.90,                                              :
:
                              Defendant.          :
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

## <u>TABLE OF CONTENTS</u>

I.   FACTUAL BACKGROUND ........................................................................................ 1

II.  LEGAL ARGUMENT .............................................................................................. 2

    A.  Standard Governing Expedited Discovery Requests To Identify An Anonymous
        Defendant. ........................................................................................................ 2

        1.   Plaintiff States A *Prima Facie* Claim of Copyright Infringement. ........................ 5

        2.   Plaintiff's Discovery Request is for Specific Information. .................................... 7

        3.   There Are No "Alternative Means" to Uncover Doe's True Identity. .................... 8

        4.   There is a Central Need for the Subpoenaed Information. .................................... 9

        5.   Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's
            Interest in Protecting Its Copyrights. ...................................................... 9

    B.  The Court Should Not Follow Other Decisions that Have Been Reversed or
        Rejected for Relying on Improper Factors to Deny Early Discovery. ...................... 10

    C.  Protective Order ............................................................................................ 18

III. CONCLUSION ..................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)...................................................................... 6

*Andersen v. Atl. Recording Corp.*,
  No. 07-934, 2009 WL 3806449 (D. Or. Nov. 12, 2009)............................... 13

*Apicella v. McNeil Labs., Inc.*,
  66 F.R.D. 78 (E.D.N.Y. 1975) ...................................................................... 3

*Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992)........................................................................ 10

*Arista Records LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010).............................................................. 4, 6, 7

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001)...................................................................... 14

*Barrow v. Wethersfield Police Dep't*,
  66 F.3d 466 (2d Cir. 1995)........................................................................ 6

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018).............................................................. 8, 16

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011) ............................................................ 8

*Canales v. ACP Facility Servs., Inc.*,
  No. 17-6937, 2019 WL 1171479 (E.D.N.Y. Mar. 13, 2019) ...................... 6

*Capitol Records, Inc. v. Thomas*,
  579 F. Supp. 2d 1210 (D. Minn. 2008) ................................................... 17

*Cobbler Nevada LLC v. Gonzalez*,
  901 F.3d 1142 (9th Cir. 2018)..................................................................... 3

*Comfort Inn Oceanside v. Hertz Corp.*,
  No. 11-1534, 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011).......................... 6

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004).................................................................... 16

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002)..................................................................... 10

*Davis v. Kelly*,
  160 F.3d 917 (2d Cir. 1998)........................................................................ 6

*Digital Sin, Inc. v. Does 1-176*,
  279 F.R.D. 239 (S.D.N.Y. 2012)................................................................. 2

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................... 5

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ................................................................................................ 6

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
  No. 17-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019)...................................... 14

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018).............................................................................. 3, 17

*In re 650 Fifth Ave. & Related Properties*,
  934 F.3d 147 (2d Cir. 2019).................................................................................. 3, 11

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008)................................................................................... 3, 11

*In re BitTorrent Adult Film Copyright Infringement Cases*,
  296 F.R.D. 80 (E.D.N.Y.) ........................................................................................ 13

*In re Fitch, Inc.*,
  330 F.3d 104 (2d Cir. 2003).................................................................................... 10

*In re Malibu Media Copyright Infringement Cases*,
  No. 17-01080 (E.D.N.Y. March 13, 2017) .............................................................. 18

*In re Murphy*,
  482 Fed. Appx. 624 (2d Cir. 2012) ........................................................................... 2

*In re Strike 3 Holdings, LLC*,
  No. 17-5630, 2018 WL 1710172 (E.D.N.Y. Apr. 9, 2018) ....................................... 18

*Independent Oil & Chem. Workers v. Procter & Gamble*,
  864 F.2d 927 (1st Cir. 1988) ................................................................................... 11

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
  284 F.R.D. 185 (S.D.N.Y. 2012)............................................................................. 7, 8

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020) ............................................................................................ 12

*Long Island Lighting Co. v. Barbash*,
  779 F.2d 793 (2d Cir. 1985)...................................................................................... 3

*Malibu Media, LLC v. Doe*,
  No. 13-205, 2013 WL 4821911 (W.D. Wis. Sep. 10, 2013)..................................... 15

*Malibu Media, LLC v. Doe*,
  No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014) ....................................... 13

*Malibu Media, LLC v. Doe*,
  No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014)............................................ 3

*Malibu Media, LLC v. Doe*,
  No. 14-4808, 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016)........................................ 7

*Malibu Media, LLC v. Doe*,
  No. 15-3147, 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016)...................................... 4

*Malibu Media, LLC v. Doe*,
  No. 15-3504, 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016)...................................... 9

iv

*Malibu Media, LLC v. Doe*,
No. 15-4381, 2015 WL 4923114 (S.D.N.Y. Aug. 18, 2015) .................................................... 15

*Malibu Media, LLC v. Doe*,
No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017) ...................................................... 12

*Malibu Media, LLC v. Doe*,
No. 18-766, 2018 WL 2386068 (D. Conn. May 25, 2018) ...................................................... 7

*Malibu Media, LLC v. John Does 1–5*,
285 F.R.D. 273 (S.D.N.Y. 2012) ............................................................................................. 15

*Malibu Media, LLC v. Maness*,
No. 12-1873, 2012 WL 7848837 (D. Colo. Dec. 4, 2012) ...................................................... 12

*Marbury v. Madison*,
5 U.S. 137 (1803) ................................................................................................................... 18

*ME2 Prods., Inc. v. Kariuki*,
No. 17-1077, 2018 WL 2088306 (W.D. Wash. May 4, 2018) ................................................. 11

*Next Phase Distribution, Inc. v. John Does 1-27*,
284 F.R.D. 165 (S.D.N.Y. 2012) ............................................................................................... 8

*Patrick Collins, Inc. v. John Does 1-9*,
No. 12-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) ................................................... 13

*Patrick Collins, Inc. v. Osburn*,
No. 12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) ...................................................... 12

*Rodriguez v. Gusman*,
974 F.3d 108 (2d Cir. 2020) .................................................................................................... 18

*Sony BMG Music Entm't v. Tenenbaum*,
660 F.3d 487 (1st Cir. 2011) .................................................................................................. 17

*Sony Music Entm't, Inc. v. Does 1-40*,
326 F. Supp. 2d 556 (S.D.N.Y. 2004) .................................................................................. 4, 9

*Strike 3 Holdings, LLC v. Doe*,
329 F.R.D. 518 (S.D.N.Y. 2019) ............................................................................................... 7

*Strike 3 Holdings, LLC v. Doe*,
330 F.R.D. 552 (D. Minn. 2019) ............................................................................................. 10

*Strike 3 Holdings, LLC v. Doe*,
337 F. Supp. 3d 246 (W.D.N.Y. 2018) .................................................................................... 15

*Strike 3 Holdings, LLC v. Doe*,
351 F. Supp. 3d 160 (D.D.C. 2018) .......................................................................................... 2

*Strike 3 Holdings, LLC v. Doe*,
370 F. Supp. 3d 478 (E.D. Pa. 2019) ...................................................................................... 15

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020) ....................................................................................... *passim*

*Strike 3 Holdings, LLC v. Doe*,
No. 18-01490, 2019 WL 5084520 (W.D.N.Y. Jan. 28, 2019) ........................................... 10, 15

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) ...................................................... 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020) ......................................... *passim*
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12609, D.E. 16 (D.N.J. June 27, 2019) ........................................................... 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-16593, 2019 WL 4745360 (D.N.J. Sept. 30, 2019) ................................. 9, 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-1762, D.E. 12 (E.D. Pa. Oct. 2, 2018) .......................................................... 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2019, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018) .............................. 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ..................................... 3
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2648, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019) ................................... 4, 8, 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-3763, ECF 12 (N.Y.E.D. Nov. 14, 2018) ..................................................... 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-569, 2018 WL 4109394 (W.D.N.Y. Aug. 28, 2018) ................................... 8
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-02552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) .............................. 9, 12
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-1152, 2019 WL 3859514 (D. Conn. Aug. 16, 2019) ................................. 15
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ............................. 11, 12
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-22743, D.E. 13 (S.D. Fla. Sept. 20, 2019) ................................................. 12
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-396, 2020 WL 917090 (D. Md. Feb. 25, 2020) .......................................... 12
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-5818, 2019 WL 5459693 (S.D.N.Y. Oct. 9, 2019) ......................... 5, 15, 17
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-945, 2019 WL 4752094 (E.D.N.Y. Sept. 30, 2019) ..................................... 4
*Strike 3 Holdings, LLC v. Doe*,
  No. 20-4501, 2021 WL 535218 (E.D.N.Y. Feb. 12, 2021) ....................... 5, 10, 17
*Strike 3 Holdings, LLC v. Doe*,
  No. 20-5123, 2020 WL 6342770 (E.D. Pa. Oct. 29, 2020) ..................................... 5
*U.S. v. Taylor*,
  487 U.S. 326 (1988) ....................................................................................................... 10

*UN4 Prods., Inc. v. Doe,*
  No. 17-3278, 2017 WL 2589328 (E.D.N.Y. June 14, 2017) ........................................ 4, 8, 9, 10
*Urbont v. Sony Music Entm't,*
  831 F.3d 80 (2d Cir. 2016) ................................................................................................ 5
*Valentin v. Dinkins,*
  121 F.3d 72 (2d Cir. 1997) .............................................................................................. 2, 6
*Vient v. APG Media,*
  No. 18-3862, 2019 WL 2250576 (D. Md. May 24, 2019) .................................................. 13
*W. Coast Prods., Inc. v. Does 1-1,434,*
  No. 11-55, 2012 WL 10132002 (D.D.C. Aug. 6, 2012). ................................................... 9
*Watson v. City of Kingston,*
  No. 15-1356, 2016 WL 11605147 (N.D.N.Y. Dec. 27, 2016) ............................................ 6
*Zervos v. Verizon New York, Inc.,*
  252 F.3d 163 (2d Cir. 2001) ............................................................................................. 11

**Statutes**

17 U.S.C. § 106 .......................................................................................................................... 6, 7
17 U.S.C. § 410 .......................................................................................................................... 6
17 U.S.C. § 503 .......................................................................................................................... 17
17 U.S.C. § 504 .......................................................................................................................... 17
17 U.S.C. § 505 .......................................................................................................................... 17
47 U.S.C. § 522 .......................................................................................................................... 8
47 U.S.C. § 551 .......................................................................................................................... 1, 3, 8, 10

**Other Authorities**

S. Rep. No. 105-190 .................................................................................................................... 16

**Rules**

Fed. R. Civ. P. 1 ......................................................................................................................... 14, 17
Fed. R. Civ. P. 26 ....................................................................................................................... 1, 4, 17
Fed. R. Civ. P. 41 ....................................................................................................................... 14

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") hereby respectfully submits this Memorandum of Law in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference, pursuant to Federal Rule of Civil Procedure 26(d)(1).

## I.      FACTUAL BACKGROUND

Plaintiff is part of a creative enterprise that produces the intellectual property associated with the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands") and owns the copyrights to each of the motion pictures distributed through the Brands' sites. *See* Declaration of David Williamson, ¶ 13, attached hereto as Exhibit A [hereinafter "Williamson Decl."]. Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 14. Unfortunately, this success also brings piracy on a massive scale, which causes tremendous damage. *Id.* at ¶¶ 26, 28. To continue providing value for its subscribers, exciting and inspiring projects for performers, and top-paying jobs and growth in the adult entertainment community, Plaintiff must protect its copyrights. *Id.* at ¶¶ 18, 39.

Plaintiff has developed proprietary software, VXN Scan ("VXN"), which has detected and recorded forensic evidence of the infringement of Plaintiff's copyrighted works at issue in this matter. Specifically, that Defendant John Doe subscriber assigned IP address 24.46.250.90 ("Doe") was illegally downloading and distributing 57 of Plaintiff's motion pictures over a substantial time period. *See* Williamson Decl. at ¶¶ 40–80; Declaration of Patrick Paige, attached hereto as Exhibit B [hereinafter "Paige Decl."], at ¶¶ 13–28; D.E. 1, 1-1. BitTorrent use is anonymous (revealing only the infringer's IP address), and Congress has prohibited Internet Service Providers ("ISPs") from disclosing an IP address subscriber's information absent a court order. *See Cable Communications Policy Act of 1984* ("CCPA"), 47 U.S.C. § 551 *et seq.*

1

Accordingly, Plaintiff now seeks leave to serve limited discovery on Doe's ISP, Optimum Online ("Optimum Online"), in the form of a Rule 45 subpoena seeking only the name and address of the subscriber assigned this IP address during a time of recorded infringement.

This information is necessary, relevant, and proportional to the needs of this case. Without leave to conduct early discovery to obtain Doe's identity, Plaintiff cannot investigate Doe's role in the infringement (including whether other individuals exist with sufficient access to the IP address during the period of infringement and, thus, might plausibly either be the "true" infringer, or additional infringers), amend its pleading to further identify the infringer (beyond his or her association with the IP address), and serve that person with process.  In short, without this subpoena, Plaintiff cannot protect its copyrights.

## II.   LEGAL ARGUMENT

### A.   Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant.

"In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the *only* potential avenue for discovery is a court order under Rule 26(d)(1).'"  *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) (internal brackets and citations omitted) (emphasis added), *rev'g*, 351 F. Supp. 3d 160 (D.D.C. 2018) (Lamberth, J.); *see also Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Indeed, the Second Circuit has recognized "that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint," and that "[i]n such situations, 'the plaintiff should be given an opportunity through discovery to identify the unknown defendants.'"  *In re Murphy*, 482 Fed. Appx. 624, 627 (2d Cir. 2012) (quoting *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997)).  This is just such a case.

Although BitTorrent infringement suits "fit[] squarely within the tradition of copyright enforcement," *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018), the anonymity afforded by the BitTorrent protocol (revealing only the user's IP address), along with the qualified privacy interest for subscriber data created by the CCPA, presents a unique technological obstacle.  The only lawful way Plaintiff (and all other copyright holders) have of directly combating mass infringement is to discover the name of the person assigned the IP address being used to commit the infringement, *id.* at 1036, and then determine whether it can further identify that person (or someone else) as the infringer.  *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1147 (9th Cir. 2018); *see Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, at *4 (E.D. Cal. Feb. 26, 2019) ("*Cobbler*[] did not disturb the Ninth Circuit's decision in *Glacier Films*[.]").  Rightsholders can only do that by obtaining court authorization to serve a subpoena on the ISP to identify the subscriber, 47 U.S.C. § 551, *et seq.*, which first requires that suit be filed naming the subscriber as the placeholder defendant.  *See Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, at *6–9 (D. Md. Dec. 16, 2014) (Grimm, J.).  As a result, courts across the country have adopted "sensible" and "practical" procedures to permit limited "early discovery" of a subscriber's identity so that these suits may either advance or be promptly dismissed.  *Glacier Films*, 896 F.3d at 1036, 1038, 1040.

The Second Circuit has recognized that litigants have a "substantial right" to "be afforded a meaningful opportunity to establish the facts necessary to support [their] claim."  *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 157 (2d Cir. 2019) (quoting *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)); *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985); *Apicella v. McNeil Labs., Inc.*, 66 F.R.D. 78, 82 (E.D.N.Y. 1975) ("The right of litigants to discover and present relevant evidence in civil litigations is given great

weight in federal courts."). And it is beyond dispute that, pursuant to Rule 26, the identity of the subscriber is "unquestionably" relevant and proportional to the needs of this case.[1] *See Malibu Media, LLC v. Doe*, No. 15-3147, 2016 WL 5478433, at *4 (S.D.N.Y. Sept. 29, 2016); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019).

Thus, the only question is whether this limited discovery should be provided on an expedited basis. In the Second Circuit, "courts assess applications for expedited discovery prior to a Rule 26(f) conference under a 'flexible standard of reasonableness and good cause,'" and typically utilize the five-factor test adopted in *Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) when "assessing a plaintiff's initial *ex parte* motion for a Rule 45 subpoena." *Strike 3 Holdings, LLC v. Doe*, No. 19-945, 2019 WL 4752094, at *1, *2 n.1 (E.D.N.Y. Sept. 30, 2019) (citation omitted); *UN4 Prods., Inc. v. Doe*, No. 17-3278, 2017 WL 2589328, at *1 (E.D.N.Y. June 14, 2017) (collecting cases). Those factors are:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista*, 604 F.3d at 119 (quoting *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004) (Chin, J.)). Importantly, while the "good cause" requirement itself was eliminated from Rule 26 by amendment in 2015 and replaced "with the overarching relevance and proportionality standard," *Strike 3*, 964 F.3d at 1207 n.2, *Arista*'s "good cause" factors remain useful to confirm what "[c]ommon sense dictates," namely, that this relevant and proportional "discovery should be provided in an expedited fashion." *Strike 3 Holdings, LLC v.*

---

[1] This conclusion holds true even if it eventually proves that someone else in the household is the infringer, *see infra* Sec. II.B.3, since the subscriber clearly is—at the very least—an "individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i).

*Doe*, No. 18-12585, 2020 WL 3567282, at *8 (D.N.J. June 30, 2020); *see Strike 3 Holdings, LLC v. Doe*, No. 20-5123, 2020 WL 6342770, at *1 n.1 (E.D. Pa. Oct. 29, 2020). Indeed, courts that have looked past the *Arista* factors when examining applications for early discovery often find that those additional factors weigh in favor of granting the requested relied. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 20-4501, 2021 WL 535218, at *2–4 (E.D.N.Y. Feb. 12, 2021); *Strike 3 Holdings, LLC v. Doe*, No. 19-5818, 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019).

Plaintiff's application satisfies Rule 26's requirements of relevance and proportionality as well as the *Arista* test and, therefore, Plaintiff should be granted a meaningful opportunity to establish the facts necessary to support its claim against the currently-anonymous defendant.

### 1.    Plaintiff States A *Prima Facie* Claim of Copyright Infringement.

To state a *prima facie* claim for copyright infringement of Plaintiff's motion pictures (hereinafter the "Works"), *see* D.E. 1-1, Plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016). The Complaint accomplishes this, alleging: (1) "Plaintiff is the owner of the Works, which are each an original work of authorship"; (2) "Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office"; (3) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (4) "[a]t no point in time did Plaintiff authorize, permit, or consent to Defendant's distribution of its Works, expressly or otherwise." *See* D.E. 1 at ¶¶ 48, 51–53.

These allegations "quite clearly" and "unmistakably" allege the necessary elements of copyright infringement against Doe. *Strike 3*, 2020 WL 3567282 at *5–6. Moreover, there is nothing "conclusory" about these allegations. Rather, Plaintiff specifically alleges all the

necessary facts of its claim:  the "who" (the subscriber), the "what" (copyright infringement of specific works produced by Plaintiff), the "where" (established by geo-location technology), the "when" (recorded down to the day, hour, minute, and second), and the "how" (through the BitTorrent protocol).  D.E. 1, 1-1; *see Canales v. ACP Facility Servs., Inc.*, No. 17-6937, 2019 WL 1171479, at *4 (E.D.N.Y. Mar. 13, 2019); *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-1534, 2011 WL 5238658, at *6 (E.D.N.Y. Nov. 1, 2011).  That Plaintiff cannot—without early discovery—identify Doe by name is irrelevant.  *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998); *Valentin*, 121 F.3d at 75; *Watson v. City of Kingston*, No. 15-1356, 2016 WL 11605147, at *4 (N.D.N.Y. Dec. 27, 2016) ("In general, a plaintiff may proceed against a 'John Doe' placeholder defendant, so long as he replaces the John Doe with a named party within the applicable statute of limitations period.") (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–70 (2d Cir. 1995)).

Plaintiff owns a valid copyright in each of the Works.  *See* 17 U.S.C. § 410(c); *see also* D.E. 1 at ¶¶ 48, 51.  All of Plaintiff's copyrights were registered with the Copyright Office at the time suit was filed.  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, __ U.S. __, 139 S. Ct. 881, 886–87 (2019); *see* D.E. 1-1.  Moreover, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, Patrick Paige.  *See* Paige Decl., Ex. B.  And each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works.  *See* Declaration of Susan B. Stalzer, Exhibit C.

Plaintiff has also made a plausible *prima facie* showing of "copying" by Doe.  "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in [17 U.S.C.] § 106."  *Arista*, 604 F.3d at 117 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).  Plaintiff's Complaint alleges that Doe not only

downloaded Plaintiff's Works over the BitTorrent network, 17 U.S.C. § 106(1), but also distributed these files to other users in the BitTorrent swarm.  *Id.* at § 106(3); *see* D.E. 1 at ¶¶ 4, 20–46, 52.

"Plaintiff has made a concrete, *prima facie* case of copyright infringement by . . . alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement."  *Malibu Media, LLC v. Doe*, No. 14-4808, 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016).  "Because Plaintiff has sufficiently stated a viable claim of copyright infringement against the identified IP address[] and its placeholder-defendant subscriber[], Plaintiff should be provided with discovery to further assist it in identifying the underlying wrongdoer."  *Strike 3*, 2020 WL 3567282 at *7.

### 2.    Plaintiff's Discovery Request is for Specific Information.

The "specificity" required by this factor refers to "[the] specificity of the *discovery request*."  *Arista*, 604 F.3d at 119 (emphasis added).  To satisfy this element a plaintiff must seek "concrete and narrow information:  the name and address of the subscriber associated" with the IP address being used to commit the alleged infringement.  *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012).  "Courts have labeled the subscriber's identity and address as 'highly specific'" in these cases.  *Malibu Media, LLC v. Doe*, No. 18-766, 2018 WL 2386068, at *3 (D. Conn. May 25, 2018) (citation omitted).  This factor is met because "Strike 3 seeks only the true name and permanent address of John Doe . . . [and] is not asking for more information than is necessary to identify and serve the Defendant."  *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 521 (S.D.N.Y. 2019); *see also Strike 3*, 2020 WL 3567282 at *8.

### 3.   There Are No "Alternative Means" to Uncover Doe's True Identity.

"BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address," *John Wiley & Sons, Inc.*, 284 F.R.D. at 190, and, therefore, "Plaintiff can identify Defendant only through his IP address[.]"  *Strike 3*, 2019 WL 78987 at *1; *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("[O]nly the ISP can match the IP address to the subscriber's identity[.]").  Indeed, "BitTorrent's appeal to users is the large degree of anonymity it provides," and "[a]bsent a Court-ordered subpoena, many of the ISPs, who qualify as 'cable operators' for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of [the defendants] to Plaintiff." *Strike 3 Holdings, LLC v. Doe*, No. 18-569, 2018 WL 4109394, at *2 (W.D.N.Y. Aug. 28, 2018) (citations and internal quotation marks omitted); *UN4 Prods.*, 2017 WL 2589328 at *3; *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 352–53 (D.D.C. 2011).  By virtue of the architecture of the internet, and the qualified privacy interest created by the CCPA, there is simply no alternative means for Plaintiff to identify Doe other than a court-ordered subpoena.[2]  *See* 47 U.S.C. § 551(c); *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012).

---

[2] In an effort to conserve judicial resources, Plaintiff has filed a number of pure bill of discovery actions in Florida alongside its federal suits to obtain information to identify infringers.  The bill of discovery is an equitable cause of action that permits discovery independent of the prospective claim for relief, enabling Plaintiff to determine whether it can identify the infringer (beyond merely being the subscriber), while simultaneously affording the court oversight required by the CCPA.  Although state courts may issue the court order required by the CCPA, Doe's ISP has indicated that it will only comply with a subpoena issued by a federal court.  And, regardless of whether the subpoena is authorized by a state court in Florida, or this Court, the fact remains: a court-authorized subpoena to the ISP is the only method available for Plaintiff to learn a subscriber's identity. *See* 47 U.S.C. § 551(c).

### 4.      There is a Central Need for the Subpoenaed Information.

The need for this information cannot be understated.  Plaintiff cannot properly serve Doe—or even confirm whether Doe or someone else is an appropriate or additional defendant, *see infra* Sec. II.B—without first obtaining the subscriber's identity from his or her ISP. "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't, Inc.*, 326 F. Supp. 2d at 566; *UN4 Prods.*, 2017 WL 2589328 at *3; *Malibu Media, LLC v. Doe*, No. 15-3504, 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016). Moreover, "[o]nce in possession of Defendant's name and address, Plaintiff can investigate and confirm it has a good faith basis for believing it has found the infringing party." *Strike 3 Holdings, LLC v. Doe*, No. 19-02552, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019).  Thus, without receiving Doe's identity—to complete its investigation and, if appropriate, to amend its complaint and serve process—Plaintiff cannot proceed with its lawsuit to protect its copyrights. "[T]he protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery." *W. Coast Prods., Inc. v. Does 1-1,434*, No. 11-55, 2012 WL 10132002, at *4 (D.D.C. Aug. 6, 2012).  "Plaintiff must be able to enforce its rights[.]" *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *6 (D.N.J. Sept. 30, 2019).

### 5.      Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights.

Finally, Doe's privacy interest is minimal and outweighed by Plaintiff's interest in protecting its copyrights.  Although the CCPA recognizes that subscribers have a privacy interest in not having their identities publicly disclosed, the Act expressly recognizes it is a qualified interest and specifically provides that courts can order that identifying information be disclosed.

*See* 47 U.S.C. § 551(c); *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) (reversing magistrate judge's decision that privacy concerns required denial of request to serve subpoena prior to a Rule 26(f) conference); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order") (citing 47 U.S.C. § 551(c)(2)(B)).   Here, "Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest," *Strike 3 Holdings, LLC v. Doe*, No. 18-01490, 2019 WL 5084520, at *2 (W.D.N.Y. Jan. 28, 2019); *UN4 Prods.*, 2017 WL 2589328 at *3, which may be protected by the entry of a "limited protective order" that "balances the Plaintiff's right to pursue its claims and the concomitant right of access to court proceedings enjoyed by the public with . . . legitimate privacy interests" of Doe.  *Strike 3*, 2020 WL 3567282 at *11.

> **B.  The Court Should Not Follow Other Decisions that Have Been Reversed or Rejected for Relying on Improper Factors to Deny Early Discovery.**

Although courts often utilize the five factors outlined in *Arista* when determining whether "good cause" exists to permit early discovery to identify anonymous defendants, there is no requirement that a court limit itself to only those factors.  *See Strike 3*, 2021 WL 535218 at *2–4; *Strike 3*, 2020 WL 3567282 at *4.  However, while courts have "wide discretion" over pre-trial discovery, *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003), that discretion is not boundless. "'[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' . . . [w]here a district court rests its discovery ruling 'on an improper factor,' or an error of law, it necessarily falls short of this standard."  *Strike 3*, 964 F.3d at 1208 (quoting *U.S. v. Taylor*, 487 U.S. 326, 336 (1988)); *App. of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) ("Judicial discretion is necessarily

broad—but it is not absolute.  Abuse occurs . . . when an improper factor is relied upon[.]")
(quoting *Ind. Oil & Chem. Workers v. Procter & Gamble*, 864 F.2d 927, 929 (1st Cir. 1988)).

The "range of acceptable decision making" available to a magistrate judge on a given
issue entrusted to his or her discretion, such as pretrial discovery, is "assuredly one of law."
*Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 n.6 (2d Cir. 2001) (citation omitted).  The
Second Circuit has held that a District Court exceeds its discretion when its discovery rulings are
"so limited as to affect a party's substantial rights."  *In re 650 Fifth Ave.*, 934 F.3d at 157
(quoting *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 103).  "The substantial right at issue
here is that '[a] party must be afforded a meaningful opportunity to establish the facts necessary
to support [its] claim.'"  *Id.* (quoting *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 103).

Clearly, a categorical denial of *all* discovery—closing the courthouse doors to Plaintiff—
"cannot be located within the range of permissible decisions."  *Zervos*, 252 F.3d at 169; *see In re
650 Fifth Ave.*, 934 F.3d at 157.  Moreover, there are several improper factors this Court should
reject when determining whether "good cause" exists to allow an ISP subpoena here.

First, this Court should reject the speculation that someone other than the subscriber
exists, has sufficient access to the IP address, and is using it to infringe on Plaintiff's copyrights.
To be sure, it is *possible* Doe might not be the infringer (or might not be the *only* infringer).  *But
see ME2 Prods., Inc. v. Kariuki*, No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4,
2018) ("Plaintiff may be wrong—but it is not required to prove its allegations in order to
adequately plead a claim of infringement under *Twombly*."); *see Strike 3 Holdings, LLC v. Doe*,
No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019) ("[W]hile the subscriber is not
necessarily the infringer, the only party that Plaintiff knows of with continuous access to the IP
address is the subscriber defendant.  Thus, Plaintiff needs the subscriber information to conduct a

11

good faith investigation."); *Malibu Media, LLC v. Maness*, No. 12-1873, 2012 WL 7848837, at *6 (D. Colo. Dec. 4, 2012) ("Plaintiff has a constitutional right to file a lawsuit and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works."), *report and rec. adopted*, 2013 WL 1397275 (D. Colo. Apr. 5, 2013).

However, at this juncture, Plaintiff's initial complaint—filed *before* early discovery has occurred—clearly states a plausible claim of infringement against the anonymous placeholder defendant,[3] the potential existence of an infringer *other* than the subscriber is irrelevant,[4] and there is a reasonable inference that the subscriber is the infringer based on all currently available evidence.  *See Kansas v. Glover*, __ U.S. __, 140 S. Ct. 1183, 1186–91 (2020) (recognizing reasonable inference that driver is also the owner of vehicle in absence of negating information). Indeed, "it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address."  *Strike 3 Holdings, LLC v. Doe*, No. 19-396, 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (Grimm, J.) (quoting *Patrick Collins, Inc. v. Osburn*, No. 12-1294, 2014 WL 1682010, at *4 (D. Md. Apr. 28, 2014), *aff'd*, 595 Fed. Appx. 243 (4th Cir. 2015)).

"[T]he mere possibility that an unnamed defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards."  *Strike 3*, 964 F.3d at 1211.

---

[3] *See Strike 3*, 964 F.3d at 1211 (noting that it is "undoubtedly true that individuals other than the IP address subscriber may have been responsible for the infringement at issue," but rejecting argument that "this alternative explanation [is] so obvious as to render Strike 3's claim against the subscriber facially implausible"); *Strike 3*, 2020 WL 3567282 at *5–7; *Malibu Media, LLC v. Doe*, No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (denying Rule 12(b)(6) motion because "[i]t is plausible [to allege] that files downloaded using a particular IP address were downloaded by the subscriber of that address.  The possibility that a family member, guest, or neighbor may have downloaded the Works does not render Plaintiff's claims implausible").

[4] *See Strike 3*, 2019 WL 4855039 at *2; *Strike 3 Holdings, LLC v. Doe*, No. 19-22743, D.E. 13 at *6-8 (S.D. Fla. Sept. 20, 2019); *Strike 3*, 2019 WL 1865919 at *2.

> At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place. It is well established that plaintiffs are permitted to proceed against John Doe defendants so long as discovery can be expected to uncover the defendant's identity. That is precisely what Strike 3 seeks here: the discovery necessary to reveal the defendant's identity and to begin litigating its infringement claims.

*Id.* at 1210 (citation omitted). "The mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside." *Id.* at 1209.

Second, the Court should not weigh the number of suits filed in Strike 3's national anti-infringement campaign, or the fact that many of these matters settle before reaching trial, as reasons to deny early discovery. The volume of Strike 3's litigation is the direct product of two factors over which Strike 3 has no control: (1) the vast number of infringers, *Andersen v. Atl. Recording Corp.*, No. 07-934, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009), and (2) the anti-joinder rule, which requires that individual claims be filed against individual infringers. *See In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 90–93 (E.D.N.Y.), *report and rec. adopted sub nom.*, 288 F.R.D. 233 (E.D.N.Y. 2012). Filing a "very large number of infringement suits" is *exactly* "what the holders of intellectual property rights do when they are faced with mass infringement." *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014); *see Vient v. APG Media*, No. 18-3862, 2019 WL 2250576, at *5 n.3 (D. Md. May 24, 2019). Indeed, "[t]he proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people. The volume of lawsuits alone does not indicate any impropriety." *Patrick Collins, Inc. v. John Does 1-9*, No. 12-3161, 2012 WL 4321718, at *5 (C.D. Ill. Sept. 18, 2012). "Where, as here, a plaintiff alleges that it is the victim of copyright infringement on a massive scale, the mere fact that it has filed a

significant number of lawsuits is not a valid basis on which to impute an improper purpose." *Strike 3*, 964 F.3d at 1213.

Third, to that same end, "the fact that many such lawsuits settle or are dismissed at an early stage [is not] necessarily suggestive of improper intent." *Strike 3*, 964 F.3d at 1213; *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 17-42, 2019 WL 4647305, at *14 (S.D. Ohio Sept. 24, 2019). Not only is it "axiomatic that the law encourages settlement of disputes," *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001), but in these matters, once the infringer is identified, there is often very little—if anything—that remains in dispute. If Strike 3 determines it likely can no longer meet its ultimate burden of proof (for whatever reason), it promptly dismisses its claim. Fed. R. Civ. P. 41(a). And where the parties agree Strike 3 will likely prevail, a reasonable settlement, which often includes a commitment by the defendant to cease infringement and a moderate amount in damages, saves litigation costs and further burdening the court. Fed. R. Civ. P. 1.

Fourth, the speculative concern that embarrassment over adult content would coerce a defendant into settlement is plainly a content-based decision that violates First Amendment and equal protection principles. *Strike 3*, 964 F.3d at 1210 (reversing denial of expedited discovery request and holding "the content of a copyrighted work is *per se* irrelevant to a Rule 26(d)(1) motion seeking discovery to identify an anonymous infringer"). As the D.C. Circuit explained:

> The mere fact that a defendant may be embarrassed to have his name connected to pornographic websites is not a proper basis on which to diminish a copyright holder's otherwise enforceable property rights. . . . [W[hile there may be some social stigma attached to consuming pornography . . . it is [nonetheless] the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove.

*Id.* at 1209 (citation and internal quotation marks omitted).

Moreover, every court that has taken up this issue has found there is *no evidence* that Strike 3 engages in coercive settlement tactics.[5]  Indeed, Strike 3 itself takes measures to remove potential embarrassment-by-association as a factor in these suits, such as listing its works in the complaint only by registration number, rather than title, *cf. Malibu Media, LLC v. Doe*, No. 13-205, 2013 WL 4821911, at \*5 (W.D. Wis. Sep. 10, 2013), never initiating settlement discussions or sending demand letters, Williamson Decl. at ¶ 35, and encouraging the entry of protective orders.  *See infra* Sec. II.C.  And even if speculation alone could justify this content-based concern, it can be resolved by an appropriate protective order, which would "remove[] much, if not all, of the leverage that a plaintiff would possess to unduly coerce [a defendant] into settlement."  *Strike 3*, 2019 WL 78987 at \*4 (quoting *Malibu Media, LLC v. John Does 1–5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012)).  The fact is "there are any number of reasons free from coercion that a defendant may choose to settle, including culpability."  *Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114, at \*1 n.4 (S.D.N.Y. Aug. 18, 2015).

Fifth, the Court should not confuse the *additional* remedies afforded by the Digital Millennium Copyright Act ("DMCA") *against ISPs* who fail to satisfy safe harbor provisions, with the remedies *against infringers* provided by Congress in the Copyright Act.  "[T]here is nothing in the DMCA that suggests that merely because the statute allows a copyright owner the

---

[5] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239, \*6 (D.N.J. Oct. 24, 2019) (finding, after two (2) days of evidentiary hearings, no evidence that Strike 3 engaged in abusive litigation practices), *rev'd on other grounds*, 2020 WL 3567282 (D.N.J. June 30, 2020); *Strike 3*, 2019 WL 5459693 at \*2; *Strike 3*, 2019 WL 4745360 at \*6; *Strike 3 Holdings, LLC v. Doe*, No. 19-1152, 2019 WL 3859514, at \*2 (D. Conn. Aug. 16, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, D.E. 16 at 6 (D.N.J. June 27, 2019); *Strike 3*, 2019 WL 1529339 at \*5; *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481–82 (E.D. Pa. 2019); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256–57 (W.D.N.Y. 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-3763, ECF 12, at \*1 (N.Y.E.D. Nov. 14, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, D.E. 12 at \*1 n.1 (E.D. Pa. Oct. 2, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-2019, 2018 WL 10604533, \*3–4 (N.D. Cal. Sept. 14, 2018).

ability to compel ISPs to bar repeat offenders from using their services that the copyright right owner loses its statutory, and indeed constitutional right to sue infringers and seek the broader range of remedies provided by the Copyright Act." *Strike 3*, 2020 WL 3567282 at *9. "The DMCA 'did not simply rewrite copyright law for the on-line world.' . . . [it] merely added a second step to assessing infringement liability for Internet service providers, but is otherwise irrelevant to determining what constitutes a *prima facie* case of copyright infringement for ISPs or others." *Id.* (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 553 (4th Cir. 2004)). Indeed, when enacting the DMCA, "Congress actually expressed its intent that the courts would continue to determine how to apply the Copyright Act to the Internet and that the DMCA would merely create a floor of protection for ISPs." *CoStar Grp.*, 373 F.3d at 553. Although Plaintiff has attempted to curb mass infringement of its copyrighted works by sending thousands of "take-down" notices under the DMCA,[6] *see* Williamson Decl., at ¶ 31, individual suits like this one against extreme infringers are also necessary to (1) generally deter mass piracy and redirect infringers into the readily accessible and legal market for its Works, and (2) specifically deter (and enjoin) Doe from continuing to infringe on Plaintiff's Works, (3) to destroy the infringing copies of the Works that Doe has and is distributing using BitTorrent, and (4) to obtain

---

[6] DMCA notices of infringement, which are sent to ISPs in the (usually futile) hope that they will be forwarded to the infringers themselves, *cf. BMG Rights Mgmt. (US) LLC*, 881 F.3d at 300, 304, are different from the thousands of DMCA take-down notices that Plaintiff sends to websites that are hosting infringing content, enabling infringement by individuals. Although Plaintiff formerly sent DMCA notices of infringement to ISPs with the hope that they would be forwarded to individual infringers—to remind them that stealing is wrong—there is no "exhaustion requirement" that rightsholders first send such notices prior to filing suit against individual infringers to protect their copyrights. *See* S. Rep. No. 105-190 at 45 ("[C]opyright owners are not obligated to give notification of claimed infringement in order to enforce their rights."); *Strike 3*, 2020 WL 3567282 at *9 (holding that utilization of DMCA notice procedure is "not relevant" to Plaintiff's motion for expedited discovery).

compensation for the infringement that has occurred.  *See* 17 U.S.C. §§ 503(b); 504(a), (c); 505.
These remedies are available solely through the Copyright Act, and not the DMCA.

Finally, the Court should not abdicate its duty to decide this matter—denying this
discovery request and causing this action to "grind to a halt" and "languish[]" on the docket until
it is dismissed "for failure to prosecute or failure to make timely service," *Strike 3*, 2020 WL
3567282 at *3—by incorrectly assuming that some *further* act of Congress is necessary to make
Strike 3's copyrights enforceable.  To the contrary, BitTorrent copyright infringement suits "fit[]
squarely within the tradition of copyright enforcement."  *Glacier Films*, 896 F.3d at 1041.
"'Congress [has] specifically acknowledged that consumer-based, noncommercial use of
copyrighted materials constituted actionable copyright infringement' and 'contemplate[d] that
[BitTorrent infringement] suits like this were within the Act.'"  *Id.* at 1040 (quoting *Sony BMG
Music Entm't v. Tenenbaum*, 660 F.3d 487, 500 (1st Cir. 2011), *cert. denied*, 566 U.S. 1017
(2012)); *see also Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008).

There is no dispute that Congress has created a valid and protectible copyright interest in
Plaintiff's works.  *See Strike 3*, 2021 WL 535218 at *3 n.2; *Strike 3*, 2019 WL 5459693 at *3.
Nor is there any dispute that Rule 26(d), although generally prohibiting formal discovery before
parties can meet-and-confer, explicitly provides for an exception "when authorized . . . by court
order," Fed. R. Civ. P. 26(d)(1), and that Rule 1 instructs that the rules "should be construed,
administered, and employed by the court and the parties to secure the just, speedy, and
inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

"Plaintiff has asserted a valid copyright claim.  Unless the rules are construed to allow
some reasonable method to determine against whom that claim should be asserted, Plaintiff will
have presumably suffered a federal statutory wrong with no remedy.  That is not just."  *Strike 3*,

2020 WL 3567282 at *11 (footnote omitted).  A denial of early discovery would entail the total denial of the "substantial right" of discovery—and, by extension, a denial of the legal remedies created by Congress in the Copyright Act.  Such a denial would "run[] afoul of the fundamental principle set forth by Chief Justice Marshall, and echoed by courts ever since, that 'where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.'"  *Rodriguez v. Gusman*, 974 F.3d 108, 113 (2d Cir. 2020) (quoting *Marbury v. Madison*, 5 U.S. 137, 163 (1803)) (internal quotation marks and citation omitted).

### C.      Protective Order

The Honorable Steven I. Locke has issued several opinions in BitTorrent matters establishing procedural safeguards, such as allowing a defendant to proceed under the name "John Doe" and setting forth a schedule for a Doe Defendant to move to quash or modify Plaintiff's subpoena.  *See, e.g.*, *In re Strike 3 Holdings, LLC*, No. 17-5630, 2018 WL 1710172 (E.D.N.Y. Apr. 9, 2018); *In re Malibu Media Copyright Infringement Cases*, No. 17-01080 (E.D.N.Y. March 13, 2017).  Many courts within this District have adopted Judge Locke's decisions when granting early discovery in these matters, and Strike 3 respectfully encourages that the Court similarly establish such procedure here, should the Court find it appropriate.

## III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Doe's ISP.

Date: 01/31/2022                              Respectfully submitted,

                                              By:  _/s/ John C. Atkin_
                                              John C. Atkin, Esq.
                                              JAtkin@atkinfirm.com
                                              400 Rella Blvd., Suite 165, Suffern, NY 10901
                                              Tel.: (973) 314-8010 / Fax: (833) 693-1201
                                              *Attorneys for Plaintiff*

18